UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

CARPENTERS PENSION TRUST FUND OF :   Civil Action No. 1:12-cv-05329-SAS
ST. LOUIS, et al., Individually and on Behalf :
of All Others Similarly Situated,           :   <u>CLASS ACTION</u>
                                  :
                 Plaintiffs, :   MEMORANDUM OF LAW IN SUPPORT
                                  :   OF PLAINTIFFS' MOTION FOR CLASS
     vs.                            :   CERTIFICATION, APPOINTMENT OF
                                  :   CLASS REPRESENTATIVES AND
BARCLAYS PLC, et al.,                :   APPOINTMENT OF CLASS COUNSEL
                                  :
                 Defendants. :
                                  :

———————————————————— x

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ............................................................................1

II.     FACTUAL BACKGROUND ............................................................................2

III.    PROCEDURAL BACKGROUND....................................................................4

IV.     ARGUMENT ....................................................................................................5

    A.      Applicable Rules and Standards ...........................................................5

    B.      The Proposed Class Satisfies Rule 23(a) .............................................7

        1.      The Proposed Class Is so Numerous that Joinder of All Members Is Impracticable..........................................................7

        2.      Questions of Law and Fact Common to the Members of the Class Exist .........................................................................8

        3.      The Claims of the Proposed Class Representatives Are Typical of the Class .....................................................................10

        4.      The Proposed Class Representatives and the Proposed Class Counsel Will Fairly and Adequately Prosecute the Case on Behalf of the Proposed Class..................................................11

        5.      The Court Should Appoint Lead Plaintiffs' Choice of Counsel as Class Counsel Under Rule 23(g).................................12

    C.      The Proposed Class Satisfies the Rule 23(b)(3) Requirements ...........................13

        1.      Legal Standard Set Forth in *Halliburton II*.................................14

        2.      Common Questions of Law or Fact Predominate.....................................17

            a.      The Market for Barclays' ADSs Was Efficient During the Class Period ............................................................20

                (1)      Barclays' ADSs Traded at a Large Average Weekly Volume................................................................20

                (2)      A Significant Number of Analysts Followed and Reported on Barclays' ADSs................................................20

**Page**

(3)     Barclays' ADSs Traded on the NYSE and Were Predominantly Owned by Institutional Investors During the Class Period ....................................................21

(4)     Barclays Was Eligible to File on SEC Form F-3 During the Class Period ....................................................21

(5)     The Price of Barclays' ADSs Reacted to New, Company-Specific Information During the Class Period ................................................................................22

b.     Class Members Are Also Presumed to Rely on Defendants' Omissions Under *Affiliated Ute* ....................................................23

3.     A Class Action Is Superior to Other Available Methods for the Efficient Adjudication of This Controversy ...............................................24

V.     CONCLUSION ........................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Affiliated Ute Citizens v. United States*,
    406 U.S. 128 (1972)................................................................13, 23, 24

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)................................................................11, 13, 17

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013)...................................................... *passim*

*Anwar v. Fairfield Greenwich Ltd.*,
    2015 U.S. Dist. LEXIS 27050
    (S.D.N.Y. Mar. 3, 2015) ................................................................23

*Aranaz v. Catalyst Pharm. Partners Inc.*,
    302 F.R.D. 657 (S.D. Fla. 2014).....................................................16

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)................................................................13, 15, 18, 19

*Billhofer v. Flamel Tech.*,
    281 F.R.D. 150 (S.D.N.Y. 2012) ....................................................12

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) ................................................19, 20, 21, 22

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
    2014 U.S. Dist. LEXIS 148772
    (S.D.N.Y. Oct. 20, 2014) .......................................................4, 5, 9, 18

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
    750 F.3d 227 (2d Cir. 2014).............................................................5, 24

*City of Livonia Emps.' Ret. Sys. v. Wyeth*,
    284 F.R.D. 173 (S.D.N.Y. 2012) ....................................................17

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)................................................................7

*Darquea v. Jarden Corp.*,
    2008 U.S. Dist. LEXIS 17747
    (S.D.N.Y. Mar. 6, 2008) ...........................................................8, 11, 12

*Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992)..............................................................11

**Page**

*Dura Pharm. v. Broudo*,
    544 U.S. 336 (2005) .........................................................................................17

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ...........................................................................................6

*Ellenburg v. JA Solar Holdings Co. Ltd.*,
    262 F.R.D. 262 (S.D.N.Y. 2009) ....................................................................12

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    131 S. Ct. 2179 (2011) ...........................................................................14, 15, 17

*FindWhat Investor Grp. v. FindWhat.com*,
    658 F.3d 1282 (11th Cir. 2011) .......................................................................16

*Fogarazzo v . Lehman Bros.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) ..........................................................8, 13, 23

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) .........................................................................................11

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)..............................................................................25

*Gusinsky v. Barclays PLC*,
    944 F. Supp. 2d 279 (S.D.N.Y. 2013)................................................................5

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014) ............................................................................. *passim*

*In re Alstom SA Sec. Litig.*,
    253 F.R.D. 266 (S.D.N.Y. 2008) ....................................................................12

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    265 F.R.D. 157 (S.D.N.Y. 2010) ....................................................................10

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) ........................................................................7

*In re DVI Inc. Sec. Litig.*,
    249 F.R.D. 196 (E.D. Pa. 2008), *aff'd*, 639 F.3d 623 (3d Cir. 2011) ..............18, 19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    245 F.R.D. 147 (S.D.N.Y. 2007) ...................................................................8, 9

**Page**

*In re Groupon Inc. Sec. Litig.*,
   2015 U.S. Dist. LEXIS 27334
   (N.D. Ill. Mar. 5, 2015) ...................................................................................19

*In re Initial Pub. Offering Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006) ................................................................................6

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
   2013 U.S. Dist. LEXIS 98330
   (S.D.N.Y. July 11, 2013) ...............................................................................8, 10

*In re Marsh & McLennan Cos. Inc. Sec. Litig.*,
   2009 U.S. Dist. LEXIS 120953
   (S.D.N.Y. Dec. 23, 2009) ..................................................................................24

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) ...............................................................7, 8, 10, 24

*In re Orion Sec. Litig.*,
   2008 U.S. Dist. LEXIS 55368
   (S.D.N.Y. July 8, 2008) ...................................................................................12

*In re Sadia S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ...............................................................8, 9, 21

*In re Salomon Analyst Metromedia Litig.*,
   544 F.3d 474 (2d Cir. 2008) ..............................................................................14

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) .........................................................................6, 17

*In re Vivendi Universal, S.A., Sec. Litig.*,
   2014 U.S. Dist. LEXIS 114659
   (S.D.N.Y. Aug. 18, 2014) ..................................................................................15

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ...................................................................7, 8, 10

*In re Warner Chilcott Sec. Litig.*,
   2008 U.S. Dist. LEXIS 7613
   (S.D.N.Y. Feb. 4, 2008) ....................................................................................12

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) ..................................................................13, 14

**Page**

*Lapin v. Goldman Sachs & Co.*,
254 F.R.D. 168 (S.D.N.Y. 2008) ..........................................................................18

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*,
762 F.3d 1248 (11th Cir. 2014) ................................................................ *passim*

*Local 703 v. Regions Fin.*,
2014 U.S. Dist. LEXIS 175126
(N.D. Ala. Dec. 18, 2014) .....................................................................................16

*Lumen v. Anderson*,
280 F.R.D. 451 (W.D. Mo. 2012) .........................................................................19

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997).....................................................................................8

*McIntire v. China MediaExpress Holdings, Inc.*,
38 F. Supp. 3d 415 (S.D.N.Y. 2014).......................................................6, 16, 19

*Osberg v. Foot Locker, Inc.*,
2014 U.S. Dist. LEXIS 158329
(S.D.N.Y. Nov. 7, 2014) ........................................................................................23

*Robinson v. Metro-North Commuter R.R. Co.*,
267 F.3d 147 (2d Cir. 2001)...................................................................................10

*Schleicher v. Wendt*,
618 F.3d 679 (7th Cir. 2010) .................................................................................16

*Silverman v. Motorola, Inc.*,
798 F. Supp. 2d 954 (N.D. Ill. 2011) .....................................................................16

*Smilovitz v. First Solar, Inc.*,
295 F.R.D. 423 (D. Ariz. 2013) .............................................................................20

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
546 F.3d 196 (2d Cir. 2008)......................................................................................7

*Titan Grp., Inc. v. Faggen*,
513 F.2d 234 (2d Cir. 1975)............................................................................23, 24

*Unger v. Amedisys Inc.*,
401 F.3d 316 (5th Cir. 2005) .................................................................................19

Page

*Vanamringe v. Royal Group Techs., Ltd.*,
   237 F.R.D. 55 (S.D.N.Y. 2006) ..........................................................................12

*Wagner v. Barrick Gold Corp.*,
   251 F.R.D. 112 (S.D.N.Y. 2008) ........................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ........................................................................................10

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78j(b) ...............................................................................................1, 5, 10
   §78t(a) ...............................................................................................1, 5, 10

Federal Rules of Civil Procedure
   Rule 23 ...................................................................................... *passim*
   Rule 23(a)(1) ........................................................................................7, 8
   Rule 23(a)(2) ........................................................................................8, 9
   Rule 23(a)(3) ........................................................................................10, 15
   Rule 23(a)(4) ........................................................................................11, 12, 13
   Rule 23(b)(3) ............................................................................... *passim*
   Rule 23(c) ..............................................................................................25
   Rule 23(d) ..............................................................................................25
   Rule 23(g) ........................................................................................12, 13

17 C.F.R.
   §240.10b-5 ......................................................................................1, 10, 13, 18

Lead Plaintiffs Carpenters Pension Trust Fund of St. Louis (the "Pension Trust Fund") and St. Clair Shores Police & Fire Retirement System ("St. Clair," and with the Pension Trust Fund, "Lead Plaintiffs" or "Proposed Class Representatives"), together with plaintiff Pompano Beach Police & Firefighters' Retirement System (collectively, "Plaintiffs"), respectfully submit this memorandum of law in support of Plaintiffs' motion for: (i) class certification pursuant to Federal Rules of Civil Procedure ("Rule") 23(a) and 23(b)(3); (ii) appointment of Lead Plaintiffs as Class Representatives; and (iii) appointment of Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Lead Counsel") as Class Counsel.

## I.    PRELIMINARY STATEMENT

This action has been brought against defendants Barclays PLC, Barclays Bank PLC, Barclays Capital Inc. ("Barclays Capital" and collectively, the "Company or "Barclays"), as well as John Varley, Robert E. Diamond, and Marcus Agius (the "Individual Defendants," and with Barclays, "Defendants") alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).  Plaintiffs seek certification of a class consisting of all persons who purchased American Depositary Shares ("ADS") of Barclays PLC between July 10, 2007 and June 27, 2012, inclusive (the "Class Period"), and who were damaged thereby (the "Class").[1]  Plaintiffs also request that the Court appoint Lead Plaintiffs as Class Representatives and appoint Robbins Geller as Class Counsel.

Class certification is particularly appropriate in this securities class action because there are numerous factual and legal questions that are common to all members of the proposed Class that

---

[1]    Excluded from the Class are Defendants, members of the immediate families of each of the Defendants, any person, firm, trust, corporation, officer, director, or other individual or entity in which any Defendant has a controlling interest, or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

relate to Defendants' materially false and misleading statements and/or omissions during the Class Period.  These common questions predominate over any individualized questions that may exist, and, along with the numerosity of Class members and the impracticability of individualized actions, proceeding as a class action is the superior means of fairly and efficiently adjudicating these issues. Moreover, Lead Plaintiffs' claims are typical of those of the other Class members, and, through the Court-appointed Lead Counsel, Lead Plaintiffs have thus far successfully prosecuted this action.

As established below, this action satisfies the requirements under Rule 23 for class certification.  Accordingly, Plaintiffs respectfully request that the Court certify the Class, appoint Lead Plaintiffs as Class Representatives, and appoint Robbins Geller as Class Counsel.

## II.    FACTUAL BACKGROUND[2]

LIBOR[3] serve as the benchmark for financial instruments and agreements all over the world, valued at many trillions of dollars.  ¶¶30-31.  Each business day, 150 LIBOR rates are fixed (10 currencies across 15 borrowing periods).  ¶32.  These daily rates are calculated by averaging a subset of the rates submitted by banks ("submissions") who serve on the respective panel for each of the 10 currencies.  ¶¶33, 39.  A submission is supposed to answer the following question: *At what rate could you borrow funds, were you to do so by asking for and then accepting inter-bank offers in a reasonable market size just prior to 11 am?*  ¶34.  Submissions are sent to Thomson Reuters, who then discards the highest and lowest 25% and averages the rest.  ¶¶38-39.  The resulting 150 LIBOR rates are then distributed live to the market.  ¶40.  Thomson Reuters also distributes to the market all of the submissions along with the names of the respective submitter banks.  ¶41.

---

[2]    Plaintiffs provide a brief summary of relevant factual allegations from the Second Amended Complaint For Violations of the Federal Securities Laws, dated January 31, 2013 ("Complaint"). *See* Dkt. No. 60.  Plaintiffs respectfully refer the Court to the Complaint for a more complete description of the facts alleged therein.  All citations to "¶__" are to paragraphs in the Complaint.

[3]    "LIBOR" refers to the London Interbank Offered Rate.  ¶29.

From at least 2005, Barclays has been a member of the panels for all 10 currencies covered by LIBOR, meaning that the Company submits 150 submissions to the market each business day. ¶42.  At all relevant times, Barclays made its daily submissions through its London Non-Sterling Liquidity Management Desk, which was, at the time, part of Barclays Capital.  ¶43.  As a panel member, Barclays was obligated to submit rates that complied with the definition of LIBOR, and was duty bound to submit rates at which the Company truly believed it could borrow money.  ¶44.

Although trillions of dollars' worth of financial instruments and loans depend on the honest, truthful reporting of LIBOR submission rates, Barclays, instead, at first, turned a blind eye to trader-induced fraud and manipulation of the LIBOR process; and, later, Barclays – through the actions of its managers, including Diamond – manipulated the LIBOR process in an effort to influence the market's perception of its financial health and liquidity.  *See* ¶¶46-51.  With respect to the trader conduct, from as early as 2005 through May 2009, Barclays traders attempted to influence Barclays' submissions in order to benefit the trading positions of their own desks.  ¶46.  Traders would contact those responsible for submitting Barclays' submissions ("submitters") to request submission of a specific rate or that a particular rate be higher, lower, or the same.  *Id.*  As a result, instead of submitting the true submission rate, submitters accommodated the traders' requests by submitting a false submission.  *Id.*  With respect to the management manipulation, from approximately August 2007 through approximately January 2009, "[c]ertain members of management of Barclays, including senior managers in the treasury department and managers of the money markets desk, directed that the Barclays Dollar LIBOR submitters contribute rates that were nearer to the expected rates of other Contributor Panel banks rather than submitting the true, higher LIBORs."  ¶53.

In response to these directions, Barclays LIBOR submitters submitted artificially lower rates. ¶54.  Diamond, Barclays' President from June 2005 until December 31, 2010, and its CEO from

January 1, 2011 until his resignation on July 3, 2012 (¶14),[4] contributed to and participated in these LIBOR manipulations by ordering his subordinates in October 2008 to keep Barclays' LIBOR submissions down and not be an outlier.  ¶74.  On June 27, 2012, Barclays issued a release announcing that it had reached settlement agreements with the U.S. Department of Justice ("DOJ"), the U.S. Commodity Futures Trading Commission ("CFTC"), and the U.K. Financial Services Authority ("FSA"), in connection with their investigations into Barclays' manipulation of LIBOR rates prior to and during the Class Period.  ¶175.  As part of its admission of wrongful conduct, Barclays disclosed that it had agreed to pay more than $450 million to the three authorities.  *Id.*  In addition, the DOJ, CFTC, and FSA also issued reports detailing Barclays' manipulation of LIBOR rates, which the Complaint incorporates by reference.[5]  *See id.* at 1.  In response to these disclosures, Barclays ADSs declined 12% the following day, on extremely heavy volume, falling from a close of $12.33 per ADS on June 27, 2012 to a close of $10.84 per ADS on June 28, 2012.  ¶198.

## III.    PROCEDURAL BACKGROUND

The initial complaint in this action was filed on July 10, 2012. *See* Dkt. No. 1.  On October 2, 2012, the Court issued an Order appointing the Pension Trust Fund and St. Clair as Lead Plaintiffs and approving their selection of the law firm of Robbins Geller as Lead Counsel.  *See* Dkt. No. 47. Following their appointment as Lead Plaintiffs, the Complaint was filed on January 31, 2013.  *See* Dkt. No. 60.  Defendants filed motions to dismiss the Complaint on March 1, 2013.  *See* Dkt. Nos. 61-63.  On May 13, 2013, the Court granted Defendants' motions to dismiss the Complaint on the

---

[4]    Varley served as CEO of Barclays from September 1, 2004, until his resignation on January 1, 2011, when he was replaced by Diamond.  ¶13.  Agius served as Chairman of Barclays' board of directors from January 1, 2007 until his resignation in July 2012.  ¶16.

[5]    Defendants have conceded that the statements in the DOJ report are "factual admissions."  *See Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 2014 U.S. Dist. LEXIS 148772, at *2- *3 n.3 (S.D.N.Y. Oct. 20, 2014) (Scheindlin, J.); Dkt. No. 103.

basis that Plaintiffs failed to plead materiality for Barclays' statements regarding its minimum control requirements and failed to plead loss causation for Barclays' false LIBOR submission rates and Diamond's October 31, 2008 conference call remarks.  *See Gusinsky v. Barclays PLC*, 944 F. Supp. 2d 279, 288-93 (S.D.N.Y. 2013); Dkt. No. 73.

On May 28, 2013, Plaintiffs moved for reconsideration (*see* Dkt. Nos. 75-77), which the Court denied on June 13, 2013.  *See Gusinsky*, 944 F. Supp. 2d at 296; Dkt. No. 78.  On July 12, 2013, Plaintiffs appealed the dismissal.  *See* Dkt. No. 79.  On April 25, 2014, the Second Circuit affirmed the Court's decision to dismiss Plaintiffs' claims based upon Barclays' statements regarding its minimum control requirements, but vacated and remanded the Court's decision to dismiss Plaintiffs' claims based upon Barclays' false LIBOR submissions and Diamond's October 31, 2008 conference call remarks, finding that loss causation had been adequately pled for these claims.  *See Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 237 (2d Cir. 2014); Dkt. No. 80.  On August 25, 2014, Defendants filed a renewed motion to dismiss.  *See* Dkt. Nos. 97-99.  On October 20, 2014, the Court denied Defendants' renewed motion in its entirety.  *See Carpenters*, 2014 U.S. Dist. LEXIS 148772, at *25; Dkt. No. 103.[6]  Defendants served their Answer to the Complaint on November 26, 2014 (*see* Dkt. No. 109) and the parties are engaged in discovery pursuant to the Scheduling Order entered by the Court on November 10, 2014.  *See* Dkt. No. 105.

## IV.    ARGUMENT

### A.    Applicable Rules and Standards

To be certified, a putative class must demonstrate that it satisfies "all four of the requirements of Rule 23(a) and one of the categories of Rule 23(b)."  *McIntire v. China MediaExpress Holdings,*

---

[6]    The Court clarified that Plaintiffs have adequately pled Section 10(b) claims against Barclays and Diamond, and Section 20(a) claims against the Individual Defendants.  *See Carpenters*, 2014 U.S. Dist. LEXIS 148772, at *25; Dkt. No. 103.

*Inc.*, 38 F. Supp. 3d 415, 422 (S.D.N.Y. 2014).[7]  In determining whether a class should be certified, the question is not whether plaintiffs will prevail on the merits, but rather whether the requirements of Rule 23 have been met.  *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001) ("The question for the district court at the class certification stage is whether plaintiffs' . . . evidence is sufficient to demonstrate common questions of fact warranting certification of the proposed class, not whether the evidence will ultimately be persuasive."); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").

In considering a class certification motion, a court will focus only on whether the prerequisites of Rule 23 are met.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).  In doing so, a court may resolve factual issues concerning the prerequisites of Rule 23 when those issues overlap with issues relating to the merits.  *See In re Initial Pub. Offering Sec. Litig*., 471 F.3d 24, 41 (2d Cir. 2006) (holding that "a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement" and "has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits").

As demonstrated below, the Proposed Class Representatives satisfy all of the prerequisites of Rule 23(a)[8] as well as the requirements of Rule 23(b)(3).[9]  Accordingly, class certification is

---

[7]   Internal citations and quotations are omitted unless otherwise specified.

[8]   Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a).

appropriate and it is respectfully submitted that the Court should grant this motion.

**B.    The Proposed Class Satisfies Rule 23(a)**

**1.    The Proposed Class Is so Numerous that Joinder of All Members Is Impracticable**

Class certification is appropriate where the proposed class is so numerous that joinder of all its individual members would be impracticable. *See* Fed. R. Civ. P. 23(a)(1); *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 69-70 (S.D.N.Y. 2009). In demonstrating that numerosity is satisfied, a plaintiff may rely on reasonable inferences drawn from available facts to estimate the size of the proposed class. *See In re Blech Sec. Litig.*, 187 F.R.D. 97, 103 (S.D.N.Y. 1999). As the Second Circuit has held, "[n]umerosity is presumed when a class consists of forty members or more." *NYSE Specialists*, 260 F.R.D. at 70 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). Moreover, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007).

During the Class Period, Barclays averaged approximately 79 million ADSs issued and outstanding, owned by hundreds, if not thousands, of persons, with such ADSs actively trading on the New York Stock Exchange ("NYSE"), an open and efficient market. *See* Declaration of John D. Finnerty, Ph.D., in Support of Lead Plaintiffs' Motion for Class Certification ("Finnerty Decl."), submitted in support herewith, at ¶¶22-23. As such, Defendants cannot legitimately dispute that

---

9    Once a court determines that the Rule 23(a) requirements have been met, it may grant class certification if the plaintiff demonstrates that it can satisfy Rule 23(b)(3) such that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

there are at least hundreds, if not thousands, of members of the proposed Class, easily satisfying the numerosity requirement. *See In re Sadia S.A. Sec. Litig.*, 269 F.R.D. 298, 309 (S.D.N.Y. 2010) (Scheindlin, J.) (finding numerosity to be presumed where millions of ADRs were outstanding); *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 2013 U.S. Dist. LEXIS 98330, at *4 (S.D.N.Y. July 11, 2013) (Scheindlin, J.) (same). Accordingly, the numerosity requirement of Rule 23(a)(1) is satisfied.

**2.    Questions of Law and Fact Common to the Members of the Class Exist**

The commonality requirement of Rule 23(a)(2) "'is met if plaintiffs' grievances share a common question of law or of fact.'" *Marisol A. v. Giuliani*, 126 F.3d 372, 276 (2d Cir. 1997). This does not mean that all issues must be identical as to each Class member. Rather, it requires plaintiffs simply to "'identify some unifying thread among the members' claims that warrants class treatment.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 158 (S.D.N.Y. 2007) (quoting *Vivendi*, 242 F.R.D. at 84). "'Even a single common legal or factual question will suffice.'" *NYSE Specialists*, 260 F.R.D. at 70. "In general, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied." *Fogarazzo v . Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (Scheindlin, J.). Accordingly, "[t]he commonality requirement has been applied permissively in securities fraud litigation." *Vivendi*, 242 F.R.D. at 84.

Common questions of law and fact are present where, as here, the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public, press releases and statements provided to the investment community and the media, and investor conference calls. *See, e.g., Darquea v. Jarden Corp.*, 2008 U.S. Dist. LEXIS 17747, at *6 (S.D.N.Y. Mar. 6, 2008) ("The alleged misrepresentation leading to artificially inflated stock prices relate to all the investors and the existence and materiality of such misstatements or omissions present important

common issues.").  Among the many questions of fact or law common to members of the Class are:

- whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about Barclays' business, operations or LIBOR submissions;

- whether Defendants omitted material facts necessary to make their statements, in light of the circumstances under which they were made, not misleading;

- whether the price of Barclays ADSs was artificially inflated during the Class Period; and

- to what extent the members of the Class have sustained damages and the proper measure of damages.

In similar circumstances, courts have found commonality satisfied.  *See, e.g., Flag Telecom*, 245 F.R.D. at 158 (common issues as to violations of federal securities laws, misrepresentations and omissions of material fact, scienter and damages satisfy commonality requirements); *see also Sadia*, 269 F.R.D. at 309 (commonality requirement satisfied where plaintiff raised several common issues similar to those alleged by Plaintiffs here, including whether "defendants' acts violated the federal securities laws"; and "[whether] the market price of [the company's] ADRs during the Class Period was artificially inflated due to defendants' material misrepresentations and omissions and failure to correct those material misrepresentations and omissions").

As explained above, this Court already sustained the allegations of the Complaint and upheld the sufficiency of the alleged public misstatements and omissions.  *See Carpenters*, 2014 U.S. Dist. LEXIS 148772, at *25.  Evidentiary proof of the claims that have been sustained will necessarily be common to all members of the Class.  Accordingly, the proposed Class satisfies Rule 23(a)(2)'s commonality requirement.

### 3.    The Claims of the Proposed Class Representatives Are Typical of the Class

The typicality requirement of Rule 23(a)(3) is satisfied where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."[10] *In re Am. Int'l Grp., Inc. Sec. Litig.*, 265 F.R.D. 157, 168 (S.D.N.Y. 2010). In a securities class action, when "plaintiffs will necessarily seek to develop facts relating to . . . the dissemination of allegedly false or misleading statements underlying their claims," the claims and nature of evidence "are generally considered sufficient to satisfy the typicality requirement." *Vivendi*, 242 F.R.D. at 85.

The claims here satisfy the typicality requirement because they "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *NYSE Specialists*, 260 F.R.D. at 70 (citing *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)). Plaintiffs allege that Defendants violated Sections 10(b) and 20(a) of the Exchange Act, as well as Rule 10b-5 promulgated thereunder, by issuing public statements and documents that misrepresented and/or omitted material facts to all investors. ¶¶205-11. When Defendants' misrepresentations and omissions were disclosed and became apparent to the market, Class members were damaged as artificial inflation came out of Barclays' ADS price. ¶¶196-200. Thus, Lead Plaintiffs suffered harms typical of those of the Class, all of which will be proven by common evidence. *See Longtop*, 2013 U.S. Dist. LEXIS 98330, at *5-*6. Accordingly, the typicality requirement of Rule 23(a)(3) is satisfied.

---

[10]   The "commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 n.5 (2011). Thus, if commonality is established, typicality is established as well.

    **4.**     **The Proposed Class Representatives and the Proposed Class Counsel Will Fairly and Adequately Prosecute the Case on Behalf of the Proposed Class**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement is met if a plaintiff does not have interests antagonistic to those of the class, and if its chosen counsel is qualified, experienced, and able to conduct the litigation. *See Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290-91 (2d Cir. 1992).[11]

First, the Proposed Class Representatives have already successfully represented the interests of the proposed Class and demonstrated their adequacy, assertiveness, and commitment to vigorously prosecute this action.[12] *See* Pension Trust Fund Decl. at ¶6; St. Clair Decl. at ¶6. The Pension Trust Fund and St. Clair each purchased thousands of Barclays ADSs during the Class Period, and have actively supervised and monitored the progress of this litigation, and will continue to actively participate in its prosecution should they be appointed as Class Representatives. *See* Pension Trust Fund Decl. at ¶¶4-7; St. Clair Decl. at ¶¶4-7. In addition, their interests are not antagonistic to those of the Class. As discussed above, all members of the Class allege claims arising from the same wrongful conduct that are based on the same legal theories as Lead Plaintiffs'

---

[11] As the Supreme Court has noted, "[t]he adequacy-of-representation requirement 'tends to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.' The adequacy heading also factors in competency and conflicts of class counsel." *Amchem Prods. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58, n.13 (1982)).

[12] The operative Scheduling Order in this action provides, in relevant part, that "Defendants' depositions of proposed class representatives . . . shall be completed by March 3, 2015." *See* Dkt. No. 105. While there is no deposition testimony from the Proposed Class Representatives – Defendants chose not to depose Plaintiffs or their investment advisors – Lead Plaintiffs nonetheless have each submitted a declaration herewith to more fully demonstrate their adequacy. *See* Declaration of Terry Nelson in Support of Plaintiffs' Motion for Class Certification, dated April 17, 2015 ("Pension Trust Fund Decl."); Declaration of James Haddad in Support of Plaintiffs' Motion for Class Certification, dated April 15, 2015 ("St. Clair Decl.").

claims.  *See Darquea*, 2008 U.S. Dist. LEXIS 17747, at *9 ("All claims alleged arise from the same

wrongful conduct, and thus, Plaintiff's interests, recouping money invested, are similar to those of

the proposed class.  As such, named Plaintiffs will fairly and adequately protect the interests of the

class.").  As shown in this litigation to date, Lead Plaintiffs are clearly committed to vigorously

prosecuting this action.  *See* Pension Trust Fund Decl. at ¶¶6-7; St. Clair Decl. at ¶¶6-7.  Therefore,

the interests of the absent Class members will be more than adequately protected by Lead Plaintiffs.

Second, Lead Plaintiffs have retained the law firm of Robbins Geller to represent them and

the proposed Class in this matter.[13]  Indeed, courts within this Circuit have repeatedly found Robbins

Geller to be adequate and well-qualified for the purpose of litigating class action lawsuits.[14]  Thus,

Robbins Geller is qualified, and, along with Lead Plaintiffs, will vigorously protect the interests of

the Class.  Accordingly, the adequacy requirement of Rule 23(a)(4) is satisfied.

### 5.   The Court Should Appoint Lead Plaintiffs' Choice of Counsel as Class Counsel Under Rule 23(g)

In addition to satisfying the adequacy prong of Rule 23(a)(4), Robbins Geller also satisfies

the considerations of Rule 23(g) and should be appointed as Class Counsel.[15]  In its capacity as Lead

Counsel, Robbins Geller has committed substantial time and resources to represent the Class and

vigorously prosecute this action.  As summarized in the previous section, Robbins Geller is also

---

[13]   *See* Firm résumé of Robbins Geller attached hereto as Exhibit A.

[14]   *See, e.g., Billhofer v. Flamel Tech.*, 281 F.R.D. 150, 158 (S.D.N.Y. 2012); *Ellenburg v. JA Solar Holdings Co. Ltd.*, 262 F.R.D. 262, 268 (S.D.N.Y. 2009); *In re Warner Chilcott Sec. Litig.*, 2008 U.S. Dist. LEXIS 7613, at *6 (S.D.N.Y. Feb. 4, 2008); *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 278 (S.D.N.Y. 2008); *In re Orion Sec. Litig.*, 2008 U.S. Dist. LEXIS 55368, at *17-*18 (S.D.N.Y. July 8, 2008); *Vanamringe v. Royal Group Techs., Ltd.*, 237 F.R.D. 55, 58 (S.D.N.Y. 2006).

[15]   In appointing class counsel pursuant to Rule 23(g), a court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit in representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A).  Consideration of all these factors supports the appointment of Robbins Geller as Class Counsel.

highly experienced in class action litigation.  Indeed, in appointing Robbins Geller as Lead Counsel, this Court has already made a preliminary (and proper) determination that it will fairly and adequately protect the interests of the putative Class.  *See* Dkt. No. 47.  The demonstrated competence of Lead Counsel to fairly and adequately represent the interests of the Class further leads to the conclusion that the requirements of Rule 23(a)(4) and Rule 23(g) are satisfied and that Lead Plaintiffs' choice of counsel should be appointed as Class Counsel pursuant to Rule 23(g).

### C.      The Proposed Class Satisfies the Rule 23(b)(3) Requirements

In addition to meeting the requirements of Rule 23(a), this action also satisfies Rule 23(b)(3)'s requirements: (1) that common questions of law or fact predominate over individual questions; and (2) that class action treatment is superior to other available methods of adjudication. *See, e.g.*, *Amchem*, 521 U.S. at 615.

With respect to the element of reliance, the predominance requirement is usually met in a securities fraud class action because plaintiffs are typically entitled to rely on the fraud on the market ("FOTM") presumption of reliance.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 241 (1988); *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) ("*Halliburton II*"); *Amgen*, 133 S. Ct. at 1192.  The FOTM theory "holds that 'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations'" and that whenever an "investor buys or sells stock at the market price, his 'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'" *Halliburton II*, 134 S. Ct. at 2408 (quoting *Basic*, 485 U.S. at 246-47).

Class members are also presumed to rely on Defendants' omissions, as set forth in the Supreme Court's decision in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972).  Under *Affiliated Ute*, "reliance is presumed when the claim rests on the omission of a material fact." *Fogarazzo*, 232 F.R.D. at 185-86; *see also In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 298

(S.D.N.Y. 2003) ("There is no burden to prove reliance on an omission.").

### 1.    Legal Standard Set Forth in *Halliburton II*

The Supreme Court recently reaffirmed *Basic*'s FOTM presumption, and also held that once plaintiffs establish the presumption, it is indirect evidence of the price impact of defendants' false statements or omissions. *Halliburton II*, 134 S. Ct. at 2405, 2408. Defendants may attempt to rebut that presumption at the class certification stage with ***direct*** evidence of a ***lack*** of any price impact. *Id.* at 2416; *see also id.* at 2417 (Ginsburg, J., concurring) (stating that it is defendants' burden to show "the absence" of any price impact and "[t]he Court's judgment, therefore, should impose no heavy toll on securities-fraud plaintiffs with tenable claims."). The Supreme Court held that it has always been the case at the ***merits stage*** that the presumption "'could be rebutted by appropriate evidence, including evidence that the asserted misrepresentation (***or its correction***) did not affect the market price of the defendant's stock." *Id.* at 2414 (emphasis added) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2185 (2011) ("*Halliburton I*")). Moreover, the Supreme Court held that defendants had always been able to introduce "price impact evidence at the class certification stage, so long as it [was] for the purpose of countering a plaintiff's showing of market efficiency, rather than directly rebutting the presumption." *Id.* at 2414-15. The Supreme Court simply now permits defendants to rebut the presumption at the class certification stage if they meet the heavy burden of establishing the ***absence*** of any price impact.[16]

*Halliburton II* also reiterated that materiality need not be proved at class certification, explaining:

[A] plaintiff satisfies that burden [of proving reliance before a class is certified] by

---

[16]   In the Second Circuit, even before *Halliburton II*, defendants could offer evidence to rebut the FOTM presumption at the class certification stage. *See In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 485 (2d Cir. 2008).

- 14 -

proving the prerequisites for invoking the presumption – namely, publicity, materiality, market efficiency, and market timing. The burden of proving those prerequisites still rests with plaintiffs and (**with the exception of materiality**) must be satisfied before class certification.

134 S. Ct. at 2412 (emphasis added).  "Even though materiality is a prerequisite for invoking the *Basic* presumption, we held [in *Amgen*] that it should be left to the merits stage, because it does not bear on the predominance requirement of Rule 23(b)(3)."  *Id.* at 2416.

Halliburton II further affirms that loss causation "'addresses a matter different from whether an investor relied on a misrepresentation, presumptively or otherwise, when buying or selling a stock.'"  *Id.* at 2406 (quoting *Halliburton I*, 131 S. Ct. at 2186).  Thus, while *Halliburton II* holds that price impact may be shown by a "correction" of the misrepresentation (*id.* at 2414-15), it distinguishes that analysis from plaintiffs having to prove loss causation and damages.[17]

Several recent decisions have interpreted *Halliburton II* and confirm that although price impact can be shown by a stock price reaction either at the time of the statement or at the time of the corrective disclosure, analysis of price impact usually focuses on stock price movement at the time the truth is disclosed.[18]  For example, in *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248 (11th Cir. 2014), the defendant claimed that the lack of stock price increase on the date of the alleged misrepresentations or omissions negated price impact.  The Eleventh Circuit rejected that notion, explaining that confirmatory statements, such as the false LIBOR submissions and Diamond statements at issue in this action, are not expected to cause an

---

[17]   As the Court noted during an October 30, 2014 scheduling conference in this action, "some of these issues don't go to class cert . . . I don't care about loss causation at class cert.  I don't care about damages at class cert."  *See* Tr. at 3:5-9; Dkt. No. 106.

[18]   Further, as recognized by the Court in *In re Vivendi Universal, S.A., Sec. Litig.*, 2014 U.S. Dist. LEXIS 114659 (S.D.N.Y. Aug. 18, 2014) (Scheindlin, J.), "*Halliburton II* made no mention of how a plaintiff can prove price impact, and certainly did not address the maintenance theory of inflation relied upon by plaintiffs in *Vivendi*."  *Id.* at *20.

increase in stock price.  *Id.* at 1256; *see also Local 703 v. Regions Fin.*, 2014 U.S. Dist. LEXIS 175126, at *4 (N.D. Ala. Dec. 18, 2014) ("The failure to disclose a material fact when a duty to do so exists is just as much of a misrepresentation as the affirmative disclosure of a misleading fact."). Likewise, in *McIntire*, Judge Marrero granted class certification where the defendant's stock price "decreased slightly" on the day of the alleged false statement and rejected defendants' contention that the price decrease was sufficient to rebut the presumption, finding that "[a] material misstatement can impact a stock's value either by improperly causing the value to increase *or* by improperly maintaining the existing stock price."  38 F. Supp. 3d at 434 (emphasis in original). Further, in *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657 (S.D. Fla. 2014), the court also certified a class and described defendants' burden to demonstrate a lack of price impact as "particularly onerous" and a "daunting task" and rejected efforts to attribute a price increase at the outset of the class period to non-fraud statements as evidence of lack of price impact.  *Id.* at 673.

Prior to *Halliburton II*, numerous other courts recognized that: (i) a material misstatement or omission can impact a stock's value either by improperly causing the stock price to increase or by improperly maintaining the existing stock price; and (ii) statements that affirm market expectations, like those made by Defendants here, would ***not*** be expected to cause a statistically significant stock price reaction when made.  *See Schleicher v. Wendt*, 618 F.3d 679, 684 (7th Cir. 2010) (stock price is inflated by a false statement or omission that prevents the price from declining); *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1315 (11th Cir. 2011) ("fraudulent misstatements that prolong inflation can be just as harmful"); *Silverman v. Motorola, Inc.*, 798 F. Supp. 2d 954, 976 (N.D. Ill. 2011) ("The fact that [the] stock price did not increase in value after the [alleged misstatement] is therefore of no moment. Defendants' statements may have comported with investors' expectations, such that the company's stock price remained unchanged. ***The relevant***

- 16 -

*change in stock price occurs when the information is revealed to the market.*") (emphasis added); *City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 182 (S.D.N.Y. 2012) ("[I]n 'a case about **omissions**, . . . conducting event study analysis on the dates of the alleged omissions would not be probative [of price impact] and therefore, one would only look at the alleged corrective disclosure date.'") (emphasis in original); *Regions*, 762 F.3d at 1257 n.5 ("[A] confirmatory misrepresentation is like an omission, because it is an affirmative representation that omits negative information. . . . [T]his type of misrepresentation would likely yield price stability rather than volatility, just as we would expect with a traditional omission.").[19]

## 2. Common Questions of Law or Fact Predominate

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The Supreme Court has held that issues such as whether or not a defendant knowingly and/or recklessly made public material misstatements and/or omissions (*i.e.*, scienter, falsity and materiality), and whether the revelation(s) of the alleged fraud proximately caused that company's stock price to decline (*i.e.*, loss causation), involve common questions of law and fact that predominate over individualized ones. *See Amgen*, 133 S. Ct. at 1196-97, 1200; *Halliburton I*, 131 S. Ct. at 2186. "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Visa Check*, 280 F.3d at 139; *see also Amgen*, 133 S. Ct. at 1196 ("Rule 23(b)(3), however, does **not** require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.'") (emphasis in original).

With respect to the element of reliance, the predominance requirement is usually met in a

---

[19]   As the Supreme Court recognized in *Dura Pharm. v. Broudo*, 544 U.S. 336 (2005), the amount of inflation in a stock price caused by false and misleading statements and omissions is appropriately calculated by the later stock price declines, when the truth is revealed. *Id.* at 347.

securities fraud class action, because the plaintiffs are entitled to rely on the FOTM presumption of reliance. *See Basic*, 485 U.S. at 241; *Halliburton II*, 134 S. Ct. at 2405, 2408; *Amgen*, 133 S. Ct. at 1192. The FOTM theory "holds that 'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations'" and that whenever an "investor buys or sells stock at the market price, his 'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'" *Halliburton II*, 134 S. Ct. at 2408 (quoting *Basic*, 485 U.S. at 246-47).

As alleged in the Complaint, the entire Class relied upon the accuracy and completeness of Defendants' statements, which artificially inflated and/or artificially maintained the price of Barclays ADSs. For example, the Court has upheld allegations that, throughout the Class Period, Defendants made alleged misstatements and omissions concerning Barclays' LIBOR submissions from August 2007 through January 2009, and that Diamond made alleged misstatements and omissions concerning Barclays' LIBOR submissions during an October 31, 2008 conference call. *See Carpenters*, 2014 U.S. Dist. LEXIS 148772, at *2. These misrepresentations were publicly disseminated to shareholders and reflected in the prices they paid for Barclays' ADSs in an efficient market, *i.e.*, the NYSE. *See* Finnerty Decl. at ¶13; *see also Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 183 (S.D.N.Y. 2008) ("[N]o argument could be made that the [NYSE] is not an efficient market."); *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 119 (S.D.N.Y. 2008) ("[I]f 'a security is listed on the NYSE . . . the market for that security is presumed to be efficient.'"); *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 208 (E.D. Pa. 2008) (noting that neither the court nor the defendants were "able to locate a single case where the market for a NYSE-traded security was deemed

inefficient"), *aff'd*, 639 F.3d 623 (3d Cir. 2011).[20]

Courts generally consider the following non-exhaustive list of factors when evaluating an efficiently traded security:

"(1) [A] large weekly trading volume; (2) the existence of a significant number of analyst reports; (3) the existence of market makers and arbitrageurs in the security; (4) the eligibility of the company to file an S-3 registration statement; and (5) a history of immediate movement of stock price caused by unexpected corporate events or financial releases."

*McIntire*, 38 F. Supp. 3d at 431 (citing *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989)).[21]

Here, all of the above factors are met, and Barclays ADSs traded in an efficient market during the Class Period.  In support of their motion, Plaintiffs submit the expert declaration of Dr. Finnerty, who is a Professor of Finance at Fordham University's Graduate School of  Business Administration and who, as an expert in the financial markets, has extensively published on the topic of corporate finance (*see* Finnerty Decl. at ¶¶1-7), as well as the Supplemental Declaration of John D. Finnerty, Ph.D., in Support of Lead Plaintiffs' Motion for Class Certification ("Finnerty Supp. Decl."), submitted in support herewith.[22]  Dr. Finnerty analyzed Barclays' ADSs under the *Cammer*

---

[20]   *See also In re Groupon Inc. Sec. Litig.*, 2015 U.S. Dist. LEXIS 27334, at *11 (N.D. Ill. Mar. 5, 2015) ("'In many cases, where heavily-traded or well-known stocks are the target of suits, market efficiency will not even be an issue.'") (citing *Unger v. Amedisys Inc.*, 401 F.3d 316, 322 (5th Cir. 2005)); *Lumen v. Anderson*, 280 F.R.D. 451, 459 (W.D. Mo. 2012) (noting that "*Basic* itself recognized the NYSE as an efficient market[.]").

[21]   The *Cammer* list is meant to be a non-exhaustive list of relevant factors.  *See Regions*, 762 F.3d at 1255 ("[W]e do not think it wise to require District Courts to analyze market efficiency in terms of the *Cammer* factors in every case.  Apparently, neither do many of our sister Circuits that have applied those factors in their own cases.").

[22]   As noted in the Finnerty Decl., Dr. Finnerty reserved his right to file a supplemental declaration in this matter.  *See* Finnerty Decl. at ¶103.

factors (as well as several other factors relied upon by courts)[23] and concluded that the market for Barclays' ADSs was efficient during the Class Period.  Finnerty Decl. at ¶¶101-03; *see also* Finnerty Supp. Decl. at ¶¶3, 23-24.

### a.    The Market for Barclays' ADSs Was Efficient During the Class Period

#### (1)    Barclays' ADSs Traded at a Large Average Weekly Volume

Barclays' ADSs traded on the NYSE during the Class Period.  *See* Finnerty Decl. at ¶22. The average weekly trading volume of Barclays ADSs during the Class Period was approximately 15 million ADSs, which is equal to 18.83% of the outstanding ADSs during this timeframe.  *Id.* at ¶¶22-23.  "Turnover measured by average weekly trading of two percent or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one . . . ." *Cammer*, 711 F. Supp. at 1286.  The large trading volume of Barclays ADSs relative to the outstanding ADSs supports a finding that they traded in an efficient market during the Class Period.

#### (2)    A Significant Number of Analysts Followed and Reported on Barclays' ADSs

During the Class Period, Barclays was followed by numerous securities analysts employed by major brokerage firms.  Specifically, during the Class Period, at least 80 securities firms contributed analyst reports that covered Barclays.  *See* Finnerty Decl. at ¶25.  The presence of a substantial number of analysts indicates that Barclays ADSs were closely reviewed by investment professionals, who made recommendations to client investors based on information publicly

---

[23]    District courts have considered additional factors when determining whether a company's stock traded efficiently, including: (1) the company's market capitalization; (2) the stock's bid-ask spread; and (3) the "float," or number/percentage of shares not held by company insiders.  *See Smilovitz v. First Solar, Inc.*, 295 F.R.D. 423, 432 n.3 (D. Ariz. 2013).  These three additional factors all favor certification.  *See* Finnerty Decl. at ¶¶65-72.

available about Barclays.  *See Cammer*, 711 F. Supp. at 1286.  This extensive analyst coverage, along with media coverage and information provided by the Company to the market through SEC filings, conference calls, investor presentations, and the Thomson Reuters LIBOR submissions (*see* ¶¶39-41), supports a finding of efficiency.  *See* Finnerty Decl. at ¶¶26-27.

(3)     **Barclays' ADSs Traded on the NYSE and Were Predominantly Owned by Institutional Investors During the Class Period**

At all pertinent times, Barclays' ADSs traded on the NYSE, which is one of the most liquid and efficient forums for trading stocks in the world.  *See* Finnerty Decl. at ¶¶13, 28.  As a result, market efficiency is commonly presumed for securities that trade on the NYSE.  *See id.* at ¶67; *Sadia*, 269 F.R.D. at 309 (describing the NYSE as "an open, well-developed and efficient market"). In addition, with respect to Barclays' ADSs, there were 51 active market makers during the Class Period with trading volumes in excess of one million shares, and numerous institutional investors owned between 55% and 97% of Barclays' outstanding ADSs, both important factors in ensuring that a security is traded in an efficient market.  *See* Finnerty Decl. at ¶¶28-29.

(4)     **Barclays Was Eligible to File on SEC Form F-3 During the Class Period**

The Court in *Cammer* noted that S-3 registration is indicative of market efficiency.  *See Cammer*, 711 F. Supp. at 1284-85, 1287.  Form F-3 is the foreign private issuer equivalent of Form S-3.  Finnerty Decl. at ¶30.  As Dr. Finnerty notes, in order to be eligible to file an F-3 registration statement, Barclays must have filed reports under the Exchange Act covering the prior 12 calendar months and have an outstanding float over $75 million worldwide held by non-affiliates.  *Id.* at ¶31. "Barclays was eligible to file on Form F-3 throughout the Class Period because the Barclays ADS were listed on the NYSE during the entire Class Period."  *Id.* at ¶32.  As such, the fourth *Cammer* factor is satisfied, supporting a finding of market efficiency.

- 21 -

(5)    **The Price of Barclays' ADSs Reacted to New,
Company-Specific Information During the Class
Period**

The final *Cammer* factor focuses on whether Plaintiffs can make a *prima facie* showing that, during the Class Period, Barclays' ADS price quickly responded to the release of new Company-specific "unexpected" news events. *Cammer*, 711 F. Supp. at 1287.[24]  Here, Dr. Finnerty performed analyses to test whether Barclays ADSs traded in an efficient market during the Class Period. *See* Finnerty Decl. at ¶33; Finnerty Supp. Decl. at ¶¶5-22.  Dr. Finnerty's thoroughly conducted event study demonstrates a cause-and-effect relationship between the release of unexpected Company-specific information and the price reaction of Barclays' ADSs.  Finnerty Decl. at ¶¶51-52, 62-63. The immediate stock price reactions to unexpected news in Barclays' public disclosures support Dr. Finnerty's conclusion that Barclays' ADSs traded in an efficient market during the Class Period. *Id.*

Although Dr. Finnerty believes that the analyses he performed in the Finnerty Decl. support a finding that the market for Barclays ADSs during the Class Period was efficient, Defendants' expert, Paul A. Gompers ("Gompers"), raised concerns about Dr. Finnerty's approach.[25]  Thus, to respond to these concerns, Dr. Finnerty undertook to apply the very analyses that Gompers argued should have been used. *See* Finnerty Supp. Decl. at ¶5.  Specifically, as Gompers suggested, Dr. Finnerty: (i) replaced the industry benchmark with one comprised of companies Barclays identified as peers (*id.* at ¶¶6-8); (ii) modified the regression model to differently account for volatility (*id.* at ¶¶9-17); and

---

[24]    *Cf. Regions*, 762 F.3d at 1256 ("Confirmatory misrepresentations 'confirm' existing information about a stock, rather than release new and different information that might bring about a negative change in the stock's price . . . ***When a company releases expected information, truthful or otherwise, the efficient market hypothesis underlying Basic predicts that the disclosure will cause no significant change in the price.***") (emphasis added).

[25]    Copies of the Gompers Declaration, dated March 3, 2015, and Gompers' deposition testimony, dated March 25, 2015, are attached as Exhibits A and B, respectively, to the Declaration of David A. Rosenfeld in Support of Plaintiffs' Motion for Class Certification, Appointment of Class Representatives and Appointment of Class Counsel, dated April 17, 2015, and submitted herewith.

(iii) adopted objective criteria to select earnings release dates with unexpected results as event days. *Id.* at ¶¶18-22. For the 15 new event days, Dr. Finnerty applied his revised regression model and found statistically significant movements between the news disclosed and the price reaction of Barclays ADSs on 5 of these days at the 5% confidence levels, with 2 of those days also being significant at the 1% confidence level. *Id.* at ¶23. Accordingly, the results of Dr. Finnerty's supplemental testing further affirmed, and strengthened, his conclusion that Barclays' ADSs traded in an efficient market during the Class Period. *Id.* at ¶24.

**b.    Class Members Are Also Presumed to Rely on Defendants' Omissions Under *Affiliated Ute***

As explained above, *Affiliated Ute* provides a separate, equally viable presumption of reliance for Plaintiffs and the Class for Defendants' omissions. *See Anwar v. Fairfield Greenwich Ltd.*, 2015 U.S. Dist. LEXIS 27050, at *73-*74 (S.D.N.Y. Mar. 3, 2015) ("'the theory behind the *Affiliated Ute* presumption – that, when material information is concealed, plaintiffs should only have to prove that 'a reasonable investor might have considered the omitted facts important in the making of [her] investment decision' – is not undermined simply because a defendant makes misstatements at the same time it omits material information.'" (citing *Fogarazzao*, 232 F.R.D. at 186)). Here, Plaintiffs allege actionable omissions with respect to Barclays' false LIBOR submissions and Diamond's conference call statements. *See* ¶¶108-09 (misleading and failure to disclose); ¶¶172-73 (misleading)*; see Anwar*, 2015 U.S. Dist. LEXIS 27050, at *76 (finding omissions pled where, among other things, defendants did not disclose that they failed to follow "industry-standard procedures" and instead based their disclosures on "unverified information" that was never reconciled with "an independent source."); *see also Osberg v. Foot Locker, Inc.*, 2014 U.S. Dist. LEXIS 158329, at *15-*16 (S.D.N.Y. Nov. 7, 2014) ("[I]n instances of total non-disclosure, as in *Affiliated Ute*, it is of course impossible to demonstrate reliance[.]") (citing *Titan*

*Grp., Inc. v. Faggen*, 513 F.2d 234, 239 (2d Cir. 1975)).  Further, even though *Halliburton II* found

that materiality need not be established at the class certification stage (*see* 134 S. Ct. at 2412), the

Second Circuit has already made this finding with regard to the statements at issue in this action.

*See Carpenters*, 750 F.3d at 235 ("[w]e also conclude that plaintiffs have sufficiently pled

materiality with respect to [the false LIBOR submissions and Diamond's October 2008 remarks].").

Thus, *Affiliated Ute* clearly applies.

### 3. A Class Action Is Superior to Other Available Methods for the Efficient Adjudication of This Controversy

"Securities cases easily satisfy the superiority requirement of Rule 23."  *NYSE Specialists*,

260 F.R.D. at 80.  Not only do common questions predominate in the present litigation, but, as

further required by Rule 23(b)(3), "a class action is superior to other available methods for [the[ fair

[ ] and efficient [ ] adjudicat[ion] [of] the controversy."  Rule 23(b)(3) sets forth the following

factors to be considered in making a "superiority" determination: "(A) the class members' interests

in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any

litigation concerning the controversy already begun by . . . class members; (C) the desirability . . . of

concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in

managing a class action."  Fed. R. Civ. P. 23(b)(3).

Here, the interest of members of the Class in individually controlling the prosecution of

separate actions is minimal, because the costs and expenses of individual actions, when weighed

against the individual recoveries potentially obtainable, would be prohibitive.  Indeed, "[s]uperiority

is readily found where, as here, the alternatives [to a class action] are either no recourse for

thousands of stockholders . . . or a multiplicity and scattering of suits with the inefficient

administration of litigation which follows in its wake."  *In re Marsh & McLennan Cos. Inc. Sec.

Litig.*, 2009 U.S. Dist. LEXIS 120953, at *36 (S.D.N.Y. Dec. 23, 2009).  Thus, the first superiority

- 24 -

factor is satisfied.

Next, Lead Plaintiffs do not envision that any significant difficulties will likely be encountered in managing this case as a class action. This action is appropriate for class treatment, embodying all of the hallmarks, both in form and in substance, of the types of securities actions that are routinely certified in this Circuit and elsewhere. Moreover, it is unquestionable that the parties (and this Court) have an interest in this litigation proceeding in a single forum. By doing so, inconsistent rulings will be avoided, promoting the fair and efficient use of the judicial system.

Finally, this case presents no unusual difficulties in the management of the action. Lead Counsel and the Court have handled numerous similar actions, and the appropriate procedures and techniques for the management of such suits are well established. Furthermore, the flexibility provided to the Court under Rule 23 will enable it to address and resolve any management difficulties if they should arise. *See* Fed. R. Civ. P. 23(c), 23(d). Thus, as the Second Circuit has recognized, a class action is superior to other available methods for the fair and efficient adjudication of a controversy affecting a large number of securities holders injured by violations of the federal securities laws, *i.e.*, precisely this case:

> [A] class action [in a federal securities action] may well be the appropriate means for expeditious litigation of the issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf.

*Green v. Wolf Corp.*, 406 F.2d 291, 296 (2d Cir. 1968).

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (i) certify this action as a class action pursuant to Rules 23(a) and (b)(3); (ii) appoint Lead Plaintiffs to serve as the Class Representatives; and (iii) appoint Robbins Geller as Class Counsel.

DATED:  April 17, 2015                    ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                          SAMUEL H. RUDMAN
                                          DAVID A. ROSENFELD
                                          CHRISTOPHER M. BARRETT
                                          MICHAEL G. CAPECI


                                          _____
                                                */s/ David A. Rosenfeld*
                                          DAVID A. ROSENFELD

                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)
                                          srudman@rgrdlaw.com
                                          drosenfeld@rgrdlaw.com
                                          cbarrett@rgrdlaw.com
                                          mcapeci@rgrdlaw.com

                                          *Lead Counsel for Plaintiffs*

                                          SAXENA WHITE, P.A.
                                          MAYA SAXENA
                                          JOSEPH E. WHITE III
                                          LESTER R. HOOKER
                                          Boca Center, 5200 Town Center Circle
                                          Suite 601
                                          Boca Raton, FL  33431
                                          Telephone:  561/394-3399
                                          561/394-3382 (fax)
                                          msaxena@saxenawhite.com
                                          jwhite@saxenawhite.com
                                          lhooker@saxenawhite.com

                                          *Additional Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, David A. Rosenfeld, hereby certify that on April 17, 2015, I caused a true and correct copy

of the attached:

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES AND
APPOINTMENT OF CLASS COUNSEL

to be served: (i) electronically on all counsel registered for electronic service for this case; and (ii) by

first-class mail to any additional counsel.



*/s/ David A. Rosenfeld*

DAVID A. ROSENFELD